# United States Court of Appeals
## For the First Circuit

No. 02-9003

IN RE:  HEALTHCO INTERNATIONAL, INC.,

Debtor.

WILLIAM A. BRANDT, JR.,

Appellant,

v.

LAZARD FRERES & CO., LLC; GEMINI PARTNERS, L.P.;
HICKS, MUSE & CO. (TX), HEALTHCO HOLDING CORP.;
THOMAS O. HICK; JOHN R. MUSE; JACK E. FURST,
HICKS, MUSE EQUITY FUND, L.P; AND HMC PARTNERS, L.P.,

Appellees.

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

Before

Selya, Circuit Judge,
Coffin and Fletcher*, Senior Circuit Judges.

Daniel C. Cohn with whom David B. Madoff and Cohn, Kelakos, Khoury, Madoff & Whitesell L.L.P., were on brief for appellant.
Mark N. Parry with whom Moses & Singer L.L.P., David Lee Evans, D. Ethan Jeffery, and Hanify & King were on brief for appellees Gemini Partners, L.P., and Hicks, Muse & Co. (TX), Inc.
D. Ethan Jeffery for appellee Furst.

*Of the Ninth Circuit, sitting by designation.

Kevin J. Lesinski, David C. Kurtz, Choate, Hall & Stewart, Thomas G. Rafferty, and Cravath, Swaine & Moore on brief for appellee Lazard Freres & Co. L.L.C.

———————————————

October 21, 2002

———————————————

**COFFIN**, <u>**Senior Circuit Judge**</u>.  William A. Brandt, Jr., Trustee for Healthco International, Inc. ("Trustee"), appeals a decision of the Bankruptcy Appellate Panel for the First Circuit ("BAP") that granted administrative priority to costs awarded to appellees after they successfully defended a post-petition lawsuit brought against them by the Trustee.  Finding no error of law, we affirm.

## I.  <u>Background</u>

Healthco International, Inc., filed a voluntary bankruptcy petition in June 1993.  The Chapter 11 bankruptcy was converted to a Chapter 7 liquidation proceeding in September 1993, and the Trustee was appointed shortly thereafter.

In June 1995, the Trustee brought a lawsuit against several defendants involved in the pre-bankruptcy leveraged buyout of Healthco, alleging that the buyout was a fraudulent transaction.  Several defendants settled with the Trustee, but defendants Lazard Freres, Gemini Partners, and Hicks, Muse & Co. did not.  After a lengthy jury trial, the defendants prevailed in the district court.  The Trustee appealed the district court judgment to this court and we affirmed.  <u>See</u> <u>Brandt</u> v. <u>Wand Partners</u>, 242 F.3d 6 (1st Cir. 2001).

As prevailing parties, the defendants, now appellees, sought to have the costs of litigation, exclusive of attorney's fees, paid by the bankrupt's estate.  Pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, the district court awarded them costs for items such

as court filing fees, transcription and witness fees, and copying. Lazard Freres was awarded $62,283.62; Gemini Partners, $89,511.40; and Hicks, Muse & Co., $129,367.70.

The appellees then corresponded with the Trustee, seeking payment of these court-awarded costs. When the Trustee did not respond, the appellees moved the bankruptcy court to grant the cost awards priority status pursuant to the Bankruptcy Code, specifically 11 U.S.C. §§ 507(a)(1) & 503(b).[1]

On May 22, 2001, the bankruptcy court declined appellees' requests, holding that their claims for costs were general, unsecured claims that were not entitled to priority payment. Appellees appealed to the BAP, which reversed the decision of the bankruptcy court on February 1, 2002, holding that appellees' claims were entitled to administrative priority.

Because only issues of statutory interpretation are raised, we review the decision of the bankruptcy court de novo. See Brandt v. Repco Printers & Lithographics, Inc., (In re Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997). Although the BAP has reviewed the bankruptcy court decision, "we exhibit no particular deference to the conclusions of that tribunal." Id.

## II. Discussion

The distribution framework for claims against a bankrupt estate under Chapter 7 is established in Section 726(a) of the

---

[1]All references to the Bankruptcy Code indicate Title 11.

-4-

Bankruptcy Code, which requires that payments first be made pursuant to Section 507. Section 507(a)(1), in turn, dictates that the highest priority is afforded to "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."[2]

Chapter 123 of Title 28 encompasses §§ 1911 to 1932, which cover a variety of court-related costs, such as filing and docket fees, service fees, witness fees, and trustee fees in bankruptcy cases. Section 1920, the basis for appellees' costs awards, specifies several categories of litigation-related fees that may be charged as costs.

The Trustee claims that it was error to grant priority to the costs awarded to appellees under 28 U.S.C. § 1920 even though they fall within the plain language of Section 507(a)(1). The Trustee argues that Section 503 creates an ambiguity that obfuscates the meaning of Section 507(a)(1). He questions why Chapter 123 of Title 28 would be referenced in Section 507(a)(1) rather than in Section 503(b), interpreting Section 503(b) to be a "complete enumeration" of the types of claims that constitute administrative expenses. The Trustee submits that the Section 507(a)(1) language must have

---

[2]Section 503 is entitled "Allowance of administrative expenses." Subsection (a) is an enabling provision allowing entities to file requests for payments of administrative expenses, while subsection (b) details a series of allowable administrative expenses. 11 U.S.C. § 503.

-5-

been intended to require that <u>any</u> claim for prioritization of expenses, when founded in Chapter 123 of Title 28, would have to have been incurred in the process of establishing one of the administrative expenses permitted in Section 503(b).[3]

The plain language of Section 507(a)(1), however, requires us to reject the Trustee's construction and to conclude that appellees' claims for costs are entitled to priority status. There is no indication in the statute that the word "and" is intended to mean that fees under Chapter 123 receive priority <u>only</u> <u>when</u> incurred in furtherance of a Section 503(b) administrative expense. Moreover, Section 503(b) does not, as the Trustee contends, provide a complete enumeration of allowable costs and fees. Those items listed in Section 503(b) are prefaced by the word "including," which the Bankruptcy Code explains is not meant to have limiting effect. <u>See</u> 11 U.S.C. § 102(3) (stating that the word "including" in the Bankruptcy Code is not to be construed as a limitation); <u>see</u>, <u>e.g.</u>, <u>Vermejo Park Corp.</u> v. <u>Kaiser Coal Corp.</u> (<u>In re Kaiser Steel Corp.</u>), 998 F.2d 783, 788 (10th Cir. 1993) (holding that the word "including" after "party in interest" in Section 1109(b) of

---

[3]In oral argument, the Trustee noted that Section 503(b)(6) references certain Title 28 costs, specifically mileage and fees payable under Chapter 119. He discussed the illogic of citing these Title 28 costs in Section 503, while citing other Title 28 costs, namely those within Chapter 123, directly in Section 507(a)(1). Although listing the two sets of Title 28 fees in different locations may not be the most logical statutory drafting, they are in fact treated the same, as both receive priority status.

the Bankruptcy Code indicates that the list of examples is not exhaustive of possible parties in interest).

The Trustee suggests that applying the statute in accord with its plain language would discourage bankruptcy trustees from litigating any objections to claims for fear that the opposing party's resulting costs would be given priority. The limited nature of the costs, however, awarded only to the prevailing party for expressly delineated expenses, would not logically deter a trustee from bringing non-frivolous objections to claims. Moreover, relying on the plain language of the provision, allowing a finite class of specifically designated costs to be given priority, does not thwart the general policy that Bankruptcy Code priority designations are to be construed narrowly in order to honor the "traditional presumption favoring ratable distribution among all holders of unsecured claims." See Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 4-5 (1st Cir. 1992) (reiterating the policy of counseling strict construction of priority payment provisions in order to honor this presumption).

Finally, the Trustee relies upon In re Hemingway. There, however, we confronted the question of whether attorney's fees, arising out of a pre-petition contract, should be given priority status as an administrative expense under Section 503. We held that the fees did not meet the standard test for prioritization formulated in Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart,

Inc.), 536 F.2d 950 (1st Cir. 1976), that "a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." In re Hemingway, 954 F.2d at 5 (citing In re Mammoth Mart, 536 F.2d at 954). We noted that the fee award did not stem from post-petition activity with the trustee in bankruptcy, but from a pre-petition lease indemnification agreement with the debtor, suggesting that the result might have been different if the claim had been for post-petition attorney's fees. See id. at 5 n.4. In the present case, we are confronted not with a request that pre-petition attorney's fees be designated an administrative expense and given priority under Section 503, but rather a request that court-awarded costs arising from post-petition litigation be given priority, as expressly provided by Section 507(a)(1).[4]

---

[4]We note that the holdings of In re Hemingway and In re Mammoth Mart have been questioned by other courts as unduly confining in classifying attorney's fees as deriving from pre-petition conduct. See, e.g., In re Beyond Words Corp., 193 B.R. 540 (Bankr. N.D. Cal. 1996) (holding that attorney's fees arising from trustee's post-petition litigated claim against a third party should be qualified as administrative expenses and given priority even though the claim was based on a pre-petition contract). That issue is not, however, before us here.

We note that in a case more closely on point, a bankruptcy court gave priority to court costs arising out of a post-petition lawsuit brought by a trustee.  See <u>In re G.I.C. Gov't Secs., Inc.,</u> 121 B.R. 647 (Bankr. M.D. Fla. 1990).  In awarding the costs priority under Section 503, the court interpreted <u>Reading Co.</u> v. <u>Brown</u>, 391 U.S. 471 (1968), as holding that "parties subjected to loss and expense as a result of the administration of a bankruptcy estate are entitled to be made whole as a matter of fundamental fairness and should be allowed an administrative claim to implement that result." <u>In re G.I.C. Gov't Secs.</u>, 121 B.R. at 649.  Although statutory language compels the result here, its mandate is consistent with this overriding policy of bankruptcy law.[5]

**<u>Affirmed</u> <u>and</u> <u>remanded</u> <u>to</u> <u>the</u> <u>bankruptcy</u> <u>court</u> <u>for</u> <u>proceedings</u> <u>consistent</u> <u>with</u> <u>this</u> <u>opinion.</u>**

---

[5]Because we hold that appellees are entitled to their costs under the plain language of Section 507(a)(1), we need not consider their arguments that they are entitled to costs as an administrative expense independently under Section 503(b) or pursuant to the "fundamental fairness" exception.